# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARNIE LEIGH GRACEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0394-LWW |
| | ) | |
| MARWAN AHMAD MOHAMMED | ) | |
| ALBAWARDI and DLAYAL | ) | |
| HOLDINGS, INC. f/k/a OASIS | ) | |
| VENTURES-U.S., INC., a Delaware | ) | |
| corporation, OASIS DIRECT SEVEN, | ) | |
| LLC, a Delaware limited liability | ) | |
| company, OWL CREEK RANCH LLC, a | ) | |
| Kansas limited liability company, FIRST | ) | |
| ARIZONA PROPERTIES, LLC, a | ) | |
| Delaware limited liability company, | ) | |
| NORTH STAR SEVEN LLC, a Delaware | ) | |
| limited liability company, TABLE TOP | ) | |
| RANCH, LLC, a Delaware limited | ) | |
| liability company, TERRE DE BISON, | ) | |
| L.L.C., a Delaware limited liability | ) | |
| company, KNOLLWOOD PROPERTY | ) | |
| HOLDINGS LLC, a Delaware limited | ) | |
| liability company, WHITE PAPER LLC, a | ) | |
| Delaware limited liability company, | ) | |
| TRANQUILITY HOLDINGS, L.L.C., a | ) | |
| Colorado limited liability company, | ) | |
| SEPTEMBER HOLDINGS LLC, a | ) | |
| Colorado limited liability company, | ) | |
| OMAYYAH L.L.C., a Colorado limited | ) | |
| liability company, LES VILLAS | ) | |
| D'OMAYYAH LLC, a Colorado limited | ) | |
| liability company, and PARIS SUMMER | ) | |
| LLC, a Colorado limited liability | ) | |
| company, | ) | |
| | ) | |
| Respondents. | ) | |

Date Submitted: September 12, 2024
Date Decided: December 13, 2024

Sidney S. Liebesman, Seth A. Niederman, Kasey H. DeSantis & Joshua K. Tufts, FOX ROTHSCHILD LLP, Wilmington, Delaware; Justen P. Phelps, GIBSON WATSON MARINO LLC, Wichita, Kansas; *Counsel for Petitioner Marnie Leigh Gracie*

William E. Green, Jr., HALLORAN FARKAS + KITTILA LLP, Wilmington, Delaware; Ezra Ishmael Young, LAW OFFICE OF EZRA YOUNG, Ithaca, New York; *Counsel for Respondent Marwan Ahmad Mohammed Albawardi*

Lisa M. Zwally, GREENBERG TRAURIG, LLP, Wilmington, Delaware; *Counsel for the Dlayal Respondents*

**WILL, Vice Chancellor**

This case results from the end of a common law marriage in Kansas—the parties' third divorce. The Kansas court ordered the respondent to dispose of assets to satisfy a $47 million divorce judgment owed to the petitioner. Most of these assets are held by a web of Delaware and foreign entities.

Now, the petitioner asks this court to grant the extraordinary relief of reverse veil piercing to procure the funds she is owed. She also seeks the appointment of a receiver to dissolve a corporation. These claims fail. The respondent entities exist for legitimate business ends, pre-date the divorce, and are not parties to the Kansas judgment. The petition is dismissed.

## I.  FACTUAL BACKGROUND

The following facts are drawn from the petition and documents it incorporates by reference.[1]

---

[1] Am. Verified Pet. for the Appointment of a Receiver (Dkt. 40) ("Am. Pet."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a [petitioner] expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]") (citation omitted); *see also In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))).

## A. The Colorado and Monaco Divorces

Petitioner Marnie Leigh Gracey is a Kansas resident.[2] Respondent Marwan Ahmad Mohammed Albawardi is a Saudi national, a citizen of Malta, and a legal resident of Monaco, the United Kingdom, and the Cayman Islands.[3]

Gracey and Albawardi married in 1998.[4] In 2008, Albawardi obtained divorce decrees in both Colorado and Monaco.[5] No marital property was divided at the time.[6]

After legally divorcing, Gracey and Albawardi continued their relationship in some fashion for another ten years. They had three children during this time.[7] The couple and their children lived together first in Dubai and then in Kansas.[8] At times, Albawardi continued to represent that he and Gracey were married.[9]

---

[2] *Id.* ¶ 9.

[3] *Id.* ¶ 10.

[4] *Id.* ¶ 29.

[5] *Id.* ¶¶ 35-36.

[6] *Id.* ¶ 36.

[7] *Id.* ¶ 38.

[8] *Id.* ¶ 40. Albawardi maintains that he purchased Gracey's Kansas home and would visit his children there but denies that it was his residence. *See* Reply Br. of Albawardi in Supp. of Mot. to Dismiss or Stay Am. Verified Pet. (Dkt. 73) ("Albawardi's Reply Br.") 12 n.2.

[9] Am. Pet. ¶ 39 (alleging that Albawardi would represent that he and Gracey were married for purposes such as securing health insurance for her).

2

**B.    The Kansas Divorce**

On February 18, 2020, Gracey filed a divorce petition in Kansas state court.[10] Albawardi was the sole respondent.  Gracey sought relief including division of the marital property.[11]

Albawardi's counsel entered a limited appearance in the divorce proceeding to file a motion to dismiss for insufficient service of process, lack of personal jurisdiction, and lack of subject matter jurisdiction.[12]  The Kansas court denied the motion.[13]

Trial occurred in Kansas in December 2023.  Albawardi did not attend.[14]

On February 26, 2024, the Kansas court granted a divorce decree and judgment.[15]  It first concluded that "the parties were clearly . . . living as man and wife."[16]  Based on this finding, the Kansas court recognized the existence of a common law marriage under Kansas law.[17]

---

[10] Am. Pet. Ex. 2 ("Kansas Court Op.") ¶ 1.

[11] Am. Pet. ¶ 42.

[12] *Id.* ¶ 44.

[13] *Id.* ¶ 45.

[14] *Id.* ¶ 57.

[15] Kansas Court Op. ¶ 66.

[16] Kansas Court Op. Ex. A at 6-8.

[17] *Id.* at 11-18.

The Kansas court granted a $47 million judgment against Albawardi (the "Judgment").[18] The Judgment equaled the Kansas court's estimate of approximately half the value of marital properties and assets in Albawardi's possession.[19] To satisfy the Judgment, the Kansas court ordered Albawardi to "liquidate all right, title and interest" to 43 specific "entities, properties, and accounts."[20]

Among these assets are Dlayal Holdings, Inc. f/k/a Oasis Ventures-U.S., Inc. ("Dlayal") and various properties titled to Dlayal's wholly owned subsidiaries.[21] The Kansas court found that Albawardi "established, controlled, and personally financially benefitted from" Dlayal and its affiliates.[22]

## C.    The Dlayal Entities

Dlayal is a Delaware corporation formed by Albawardi in May 2000 and headquartered in the Cayman Islands.[23] It is a subsidiary of Pallais de Sienge—a Cayman Islands corporation formed by Albawardi in 1999 to hold real estate in

---

[18] Kansas Court Op. ¶ 94.

[19] *Id.* ¶ 64 (finding the properties and assets worth "at least $94,727,463.00"). The Kansas court refers to this amount as the value of "marital property" in Albawardi's possession based on its finding that the couple remained married after they legally divorced in 2008. *Id.* ¶¶ 8, 18.

[20] *See id.* ¶ 95 ("Marwan is ordered to liquidate all right, title and interest to the following entities, properties and accounts to satisfy all judgments ordered for Marnie herein . . . .").

[21] *Id.*

[22] *Id.* ¶ 28.

[23] Am. Pet. ¶ 11.

4

Grand Cayman.[24] Pallais de Sienge is a subsidiary of SOMA Trust—a Cayman trust formed by Albawardi in 1998.[25]

Dlayal also has various subsidiaries formed before the Kansas divorce judgment was issued.[26] These entities buy, sell, and hold properties in Dlayal's real estate portfolio for the benefit of Albawardi's family.[27] They include the following entities, referred to collectively as the "Dlayal Subsidiaries" (and with Dlayal, the "Dlayal Entities"):

- Oasis Direct Seven LLC, a Delaware entity formed by Albawardi in 1998;[28]

- Owl Creek Ranch LLC, a Kansas limited liability company formed in 2015, which is a wholly owned subsidiary of Oasis Direct Seven;[29]

---

[24] *Id.* ¶ 74 (detailing the formation of Pallais de Sienge). Dlayal became a subsidiary of Pallais de Siege when interests in several LLCs were transferred to Dlayal (then known as Oasis Ventures-U.S., Inc.) and Pallais de Siege was inserted between the SOMA Trust and Dlayal in the corporate structure purportedly for the purpose of "simplify[ing] the tax filing returns." Am. Pet. Exs. 7-8 (emails between Albawardi's tax lawyers).

[25] Am. Pet. ¶¶ 73-74; *see also supra* note 24. In 2008, the assets of SOMA Trust were rolled over into SOMA II Settlement—another Cayman trust. Am. Pet. ¶ 73. SOMA was originally established by Albawardi's uncle. *Id.* ¶ 145. Albawardi has been a beneficiary of SOMA (and subsequently SOMA II) since its creation, as were Albawardi's mother and sister before renouncing their beneficial interests in 1999. *Id.* ¶ 141.

[26] *Id.* ¶¶ 78, 12-24. In fact, only one of the subsidiaries—Les Villas D'Omayyah LLC—was created after the filing of the Kansas divorce petition. *See infra* note 38 and accompanying text.

[27] *See* Kansas Court Op. ¶ 95 (enumerating the properties and assets held by Dlayal and its subsidiaries).

[28] Am. Pet. ¶ 12.

[29] *Id.* ¶ 13.

5

- First Arizona Properties LLC, a Delaware limited liability company formed in 1998;[30]

- North Star Seven LLC, a Delaware limited liability company formed by Albawardi in 1998;[31]

- Table Top Ranch L.L.C., a Delaware limited liability company formed by Albawardi in 1999;[32]

- Terre de Bison, L.L.C., a Delaware limited liability company formed by Albawardi in 1999;[33]

- Knollwood Property Holdings LLC, a Delaware limited liability company formed by Albawardi in 1998;

- White Paper LLC, a Delaware limited liability company formed by Albawardi's mother in 2005 allegedly controlled by Albawardi;[34]

- Tranquility Holdings, L.L.C., a Colorado limited liability company formed in 2010 "upon the direction of Albawardi";[35]

- September Holdings LLC, a Colorado limited liability formed in 2015 "upon the direction of Albawardi";[36]

- Omayyah L.L.C., a Colorado limited liability company formed in 2019 "upon the direction of Albawardi";[37]

---

[30] *Id.* ¶ 14.

[31] *Id.* ¶ 15.

[32] *Id.* ¶ 16.

[33] *Id.* ¶ 17.

[34] *Id.* ¶ 19.

[35] *Id.* ¶ 20.

[36] *Id.* ¶ 21.

[37] *Id.* ¶ 22.

6

- Les Villas D'Omayyah LLC, a Colorado limited liability company formed in 2020 "upon the direction of Albawardi";[38] and

- Paris Summer LLC, a Colorado limited liability company formed in 2009 "upon the direction of Albawardi";[39]

The organizational structure is as follows:[40]



---

[38] *Id.* ¶ 23.

[39] *Id.* ¶ 24.

[40] Rectangles represent corporations, triangles represent LLCs, and ovals represent other entity types. Connecting lines show that the company on the lower level is a wholly owned subsidiary of the company immediately above it.

### D. This Litigation

Albawardi appealed the Judgment.[41] Nevertheless, on March 7, 2024, Gracey domesticated the Judgment in Delaware Superior Court.[42]

On April 12, Gracey filed this action against Albawardi and Dlayal.[43] She sought declarations that the Dlayal Entities were alter egos of Albawardi and liable to her for the Judgment, as well as the appointment of a receiver for Dlayal under Sections 291 and 322 of the Delaware General Corporation Law.[44]

Gracey also moved for a status quo order to prevent Dlayal from selling assets.[45] On April 29, I denied the motion for a status quo order.[46] In doing so, I expressed skepticism of Gracey's claims since she sought a receiver for Dlayal but the Judgment was directed at Albawardi.[47]

---

[41] *See* Opening Br. of Albawardi in Supp. of Mot. to Dismiss or Stay Am. Pet. (Dkt. 63) ("Albawardi Opening Br.") Ex. 1.

[42] *Marnie Leigh Gracey v. Marwan Ahmad Mohammed Albawardi*, C.A. No. N24J-01211 (Del. Super.).

[43] Dkt. 1.

[44] *Id.*

[45] *Id.*

[46] Dkt. 29 at 38-39.

[47] *Id.* at 37-38.

Gracey subsequently filed an amended petition.[48] She named the Dlayal Subsidiaries as additional defendants.[49] And she added a claim seeking a declaration that the Dlayal Entities are alter egos of Albawardi and liable to Gracey for the Judgment.[50]

On June 26, Albawardi and the Dlayal Entities moved to dismiss the amended petition or, alternatively, stay it in favor of the Kansas divorce appeal.[51] The motions were argued on September 12 and taken under advisement.[52]

## II. LEGAL ANALYSIS

The defendants move to dismiss the amended petition under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The following standard applies:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "[petitioner] would

---

[48] Dkt. 40.

[49] Am. Pet. ¶¶ 11-24.

[50] *Id.* ¶¶ 214-23.

[51] Dkts. 55, 57. Briefing was completed on September 9, after I permitted Gracey to file a sur-reply. Dkts. 77-78. Also on June 26, Gracey filed a renewed motion for a status quo order. I denied the renewed motion on July 11. Dkts. 41, 61.

[52] *See* Dkt. 79.

not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[53]

The "pleading standards for purposes of a Rule 12(b)(6) motion 'are minimal.'"[54] The applicable "reasonable conceivability" standard asks only "whether there is a 'possibility' of recovery."[55] I "must draw all reasonable inferences in favor" of the petitioner but am "not required to accept every strained interpretation of [her] allegations."[56]

I begin my analysis with Gracey's request for reverse veil piercing. Even under the favorable Rule 12(b)(6) standard, this claim is meritless. Gracey's Section 322 and 291 claims likewise fail; the statutes are inapplicable. The amended petition is dismissed.

## A. Alter Ego Liability

In Count I of the amended petition, Gracey seeks a declaratory judgment that "Dlayal and the Dlayal Subsidiaries are alter egos of Albawardi, and are therefore, liable to [her] for all monies due and owing . . . under the Judgment."[57] That is,

---

[53] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

[54] *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *23 (Del. Ch. May 21, 2013) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011)).

[55] *China Agritech*, 2013 WL 2181514, at *24 (quoting *Cent. Mortg.*, 27 A.3d at 537 n.13).

[56] *Gen. Motors (Hughes)*, 897 A.2d at 168.

[57] Am. Pet. ¶ 222.

10

Gracey seeks reverse veil piercing—"the imposition of liability on a business organization for the liabilities of its owners."[58]

"Delaware law presumes respect for the corporate form."[59] A subsidiary is presumptively "a separate and distinct entity from its parent corporation."[60] As such, "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task."[61] Reverse veil piercing is even more elusive and "sanctioned only in the most exceptional circumstances."[62]

"The natural starting place when reviewing a claim for reverse veil-piercing [is] the [five] traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim."[63] These factors are: "(1) whether the company was

---

[58] *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021). As indicated from the organizational chart above, the Dlayal Entities are ultimately held through trusts. *See supra* notes 24-25. Even if Gracey's claim were stronger, I would hesitate to veil pierce since any financial benefit Albawardi derived from the Dlayal Entities would seem to be as a trust beneficiary—not as an "owner" of the Dlayal Entities. I need not grapple with these complexities in any event because Gracey's claim is nonviable.

[59] *Nieves v. Insight Bldg. Co.*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020).

[60] *Id.* (quoting *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 n.44 (Del. Ch. Nov. 13, 2018)).

[61] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *see also Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *4 (Del. Ch. Sept. 5, 2023) ("Delaware courts depart from [the] general rule [of corporate separateness] only in exceptional circumstances.").

[62] *Manichaean*, 251 A.3d at 714 (citation omitted).

[63] *Id.*

11

adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder."[64]  No single factor is dispositive.[65]

A review of the relevant factors makes plain that Gracey's claim is wanting.

First, Gracey alleges that the Dlayal subsidiaries are "usually undercapitalized, and there are regular transfers of funds between them, or from Dlayal."[66]  But at the same time, she substantiates the transfers of funds *from* the trusts controlled by Albawardi *to* the Dlayal subsidiaries.[67]  This stands in contrast to the situation presented in *Manichaean*—the sole Delaware case where a viable reverse veil piercing claim was pleaded.  There, "notwithstanding its recognition of substantial exposure [of a subsidiary] to the appraisal petitioners, [the parent

---

[64] *Id.* at 706 (quoting *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)).

[65] *Id.* at 706-07 ("While these factors are useful, any single one of them is not determinative."); *see also United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) ("[N]o single factor could justify a decision to disregard the corporate entity, but . . . some combination of them [is] required . . . ."), *aff'd*, 879 F.2d 860 (3d Cir. 1989) (TABLE).

[66] Am. Pet. ¶ 217.

[67] Am. Pet. Exs. 33-34 (showing funds wired from Seven Palms to First Arizona and Dlayal).

company] made the deliberate decision to avoid flowing funds through [the subsidiary]."[68]

Gracey's allegations about Dlayal's solvency further undercut her veil piercing claim. The purported insolvency rests—at least in part—on Dlayal's "[i]nab[ility] to pay the Judgment."[69] Delaware courts have rejected this sort of circular reasoning.[70] To permit it "would sanction bootstrapping."[71]

The facts outlined in the amended petition also belie Gracey's conclusory assertions that the Dlayal Entities are mere façades.[72] The Dlayal Entities exist for

---

[68] *Manichaean*, 251 A.3d at 707.

[69] Am. Pet. ¶ 234.

[70] *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989).

[71] *Id.*

[72] *See, e.g.*, *I Am Athlete, LLC v. IM EnMotive, LLC*, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023) (finding "[t]he allegations in the Complaint . . . insufficient to support a cognizable veil piercing theory" where the company alleged to be a façade "'provid[ed] products and services for events such as marathons' and 'serviced the same general customer base' as [the] [p]laintiff"), *report adopted sub nom. Am Athlete, LLC v. Im Enmotive, LLC* (Del. Ch. 2024); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube*, LLC, 2023 WL 5688392, at *4-6 (Del. Ch. Sept. 5, 2023) (concluding that a veil piercing theory was "deficient" where the plaintiff's "own allegations" about companies' separate businesses "subvert[ed] the notion" that one company existed as an "alter ego" for another, and "belie[d] any inference that [the companies] functioned as a single economic entity"); *DG BF, LLC v. Ray*, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (rejecting a veil piercing theory where the complaint alleged that the corporation ran an active business and thus could not be a "sham"); *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *4 (Del. Ch. July 7, 2017) (same); *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *15 (Del. Ch. July 6, 2018) (dismissing a veil piercing claim where there were no facts supporting an inference that the corporation "exist[ed] solely as a vehicle for fraud").

business purposes: to buy, hold, and sell real estate.[73] They have officers, directors, and/or managers other than Albawardi.[74]

After considering the traditional veil piercing factors, a court faced with a reverse veil piercing claim "asks whether the owner is utilizing the corporate form to perpetuate fraud or an injustice."[75] Gracey's overarching theory is that the Dlayal Entities were formed for an unjust end: "shield[ing]" Albawardi's real estate investments from "creditors like Gracey."[76] This contention finds no support in the amended petition.

---

[73] *See, e.g.*, Am. Pet. ¶ 79 ("[A]t the time this action was initiated, Albawardi's U.S. real estate investment portfolio consisted of at least sixteen (16) properties. Upon information and belief, such properties have a collective value of approximately $23 million."); *see also* Am. Pet. Ex. 7 (noting changes Albawardi wishes to make to corporate structure so that "Dlayal Holdings will hold all the US real estate that we have in Colorado, Mass[achusetts], and Kansas").

[74] *See* Am. Pet. ¶ 84; *see also id.* ¶¶ 19, 93, 127, 191, 196, 199. Gracey notes that the Kansas court made "finding[s] of fact 'that [Albawardi] established, controlled and personally financially benefited from' Dlayal and the Dlayal Subsidiaries." Pet'r's Omnibus Answering Br. in Opp'n to Mots. to Dismiss or Stay (Dkt. 70) 23. I do not question the Kansas court's findings, but they were made for the purpose of dividing marital property—not determining the availability of veil piercing under Delaware law.

[75] *Manichaean*, 251 A.3d at 714-15 (outlining factors the court should consider in making this assessment); *see also Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a veil-piercing claim, the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." (citation omitted)); *Gadsden v. Home Pres. Co.*, 2004 WL 485468, at *4 (Del. Ch. Feb. 20, 2004, *revised* Mar. 12, 2004) ("A court of equity will disregard the separate legal existence of a corporation where it is shown that the corporate form has been used to perpetrate a fraud or similar injustice.").

[76] Am. Pet. ¶ 215.

14

First, it cannot reasonably be inferred that the Dlayal Entities were created for fraudulent or inequitable purposes. Gracey acknowledges that all the Dlayal Entities existed *before* the Judgment.[77] In fact, most of the Dlayal Entities were formed several decades before Gracey and Albawardi's 2008 divorce.[78]

None of Gracey's allegations suggests the Dlayal Entities exist to perpetrate a fraud against a judgment creditor of their parent company. Gracey is a judgment creditor of Albawardi—not Dlayal. And none of the Dlayal Entities is attempting to avoid the Judgment through a complex entity structure. None are subject to the Judgment.

Nor does Gracey contend that the Dlayal Entities "exercised dominion and control over [Albawardi]."[79] Quite the opposite. She alleges that Albawardi controlled the Dlayal Entities.[80]

---

[77] *Id.* ¶¶ 11-17, 19-24. As noted above, one Dlayal Entity was formed before Gracey filed for divorce in Kansas. *See supra* note 26.

[78] *See* Am. Pet. ¶¶ 11-17, 19-24, 37, 42.

[79] *Manichaean*, 251 A.3d at 715 (explaining that, in assessing "whether the owner is utilizing the corporate form to perpetuate fraud or an injustice," the court should consider "the degree to which the corporate entity whose disregard is sought has exercised dominion and control over the insider who is subject to the claim by the party seeking a reverse pierce" and "the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider").

[80] *See, e.g.*, Am. Pet. ¶ 4 ("Dlayal and its subsidiaries are sham entities formed and controlled by Albawardi without any business purpose other than to hold Albawardi's U.S. real estate investment portfolio, which he built collectively with Gracey during their marriage."); *id.* ¶ 8 ("[I]t is obvious that Albawardi controls Dlayal, the Dlayal Subsidiaries and the trusts that own Dlayal, Pallais de Sienge and SOMA II.").

The risk of "harm [to] innocent third-party creditors of the entity [Gracey] seeks to reach" provides another basis to reject her claim.[81] Dlayal is part of a family trust portfolio.[82] The Dlayal Subsidiaries have bought and sold real estate for decades. The amended petition suggests that Albawardi's relatives have benefited from these transactions, meaning that they could also be negatively affected by reverse veil piercing.[83]

Thus, Gracey's reverse veil pierce claim is dismissed with prejudice. The Dlayal Subsidiaries are dismissed from this action.

### B.    Section 322

In Count II of the amended petition, Gracey seeks the appointment of a receiver for Dlayal under 8 *Del. C.* § 322.[84] Section 322 permits the Court of Chancery to appoint a receiver "[w]henever any corporation shall refuse, fail or neglect to obey any order or decree of any court of this State."[85] Gracey asserts that

---

[81] *Manichaean*, 251 A.3d at 715 (adopting the test proposed in Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 68 (1990)).

[82] *See supra* notes 24-25 and accompanying text (explaining how Dlayal fits within the broader trust structure); *see also* Am. Pet. ¶¶ 19, 127 (alleging that Albawardi's mother formed White Paper LLC and remained the sole member until the early 2000s).

[83] *See* Am. Pet. ¶ 189 (describing Albawardi's efforts to support his mother using proceeds from transactions conducted by the Dlayal Entities).

[84] *Id.* ¶¶ 224-28.

[85] 8 *Del. C.* § 322.

the domesticated Judgment satisfies the statute.[86]  She asks that a receiver be appointed to "arrange for the orderly windup of Dlayal's business, the liquidation of Dlayal's assets, and the distribution of the assets of Dlayal to satisfy the Judgment."[87]

The statue is inapplicable.  It explicitly requires a "corporation" to refuse compliance with orders.[88]  But the Judgment is directed at Albawardi—not Dlayal.  Albawardi was ordered to act and liquidate certain assets; Dlayal was not.  Dlayal is not even a party to the Kansas divorce proceeding.  It has not "refused, failed [or] neglected" to obey an order of a Delaware court, as Gracey claims.[89]

There is no basis to appoint a receiver for Dlayal under Section 322.  Count II is dismissed.

## C.    Section 291

In Count III of the amended petition, Gracey seeks the appointment of a receiver under 8 *Del. C.* § 291.[90]  Section 291 provides, in relevant part: "Whenever a corporation shall be insolvent, the Court of Chancery, on the application of any

---

[86] Am. Pet. ¶ 70.

[87] *Id.*

[88] 8 *Del. C.* § 322.

[89] Am. Pet. ¶ 227.

[90] *Id.* ¶¶ 229-37.

creditor or stockholder thereof, may, at any time, appoint 1 or more persons to be receivers of and for the corporation . . . ."[91]

She contends that Dlayal is "insolvent because it is unable to pay its liability under the Judgment in the ordinary course of business."[92] She therefore asks that a receiver be appointed to wind up Dlayal and distribute its assets.[93]

As with her Section 322 claim, however, the plain text of the statute is unmet. Gracey is not a creditor of Dlayal by virtue of the Judgment.[94] She is a creditor of Albawardi. The Judgment is directed at Albawardi—not Dlayal.[95]

Regardless of Dlayal's solvency, Gracey is neither a "stockholder" nor a "creditor" of Dlayal—as Section 322 requires.[96] The statute does not apply to creditors of individuals.

Count III is therefore dismissed.[97]

---

[91] 8 *Del. C.* § 291.

[92] Am. Pet. ¶ 234. In addition, Gracey makes a conclusory allegation that "[u]pon information and belief," Dlayal "has a deficiency of assets below its liabilities with no reasonable prospect that the business can be successfully continued in its current state." *Id.* ¶ 231.

[93] *Id.* ¶¶ 234-37.

[94] *But see id.* ¶ 235 (making a conclusory allegation otherwise).

[95] *See supra* note 18 and accompanying text.

[96] 8 *Del. C.* § 291.

[97] *See Siple v. S&K Plumbing and Heating, Inc.*, 1982 WL 8789, at *2 (Del. Ch. Apr. 13, 1982) ("[T]he appointment of a liquidating receiver lies in the discretion of the Court. If the Court entertains any serious doubt, the appointment of a receiver should be denied." (citation omitted)).

## III. CONCLUSION

For the reasons outlined above, Count I is dismissed because no grounds for reverse veil piercing are pleaded.  Counts II and III are dismissed because neither Section 322 nor Section 291 is applicable.  The amended petition is dismissed in its entirety.